```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE        *  MDL Docket No. 2004
                                    4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
                                    Case No.
LIABILITY LITIGATION             *  4:13-cv-243 (Standridge)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Sandra Standridge was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Standridge brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Standridge also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on all of Standridge's claims, contending that they are time-barred under Alabama law. For the reasons set forth below, the Court agrees, and Mentor's summary judgment motion (ECF No. 36 in 4:13-cv-243) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Standridge developed stress urinary incontinence. She consulted with Dr. Brian Wade and decided to undergo a sling implant to treat her incontinence. Dr. Wade implanted Standridge with ObTape on April 28, 2005. After the surgery, Standridge developed pain and had difficulty urinating. At her follow-up appointment with Dr. Wade one month after the surgery, Dr. Wade told Standridge that her symptoms would resolve in time. The symptoms did not resolve, but Standridge did not return to Dr. Wade or see another doctor at the time because she did not have health insurance.

In September 2006, Standridge visited Dr. Leon Hamrick. Dr. Harmick examined Standridge and noted that the tissue over Standridge's ObTape was thin. Standridge believes that Dr. Hamrick told her that "there was a[n] incision that was not

2

healed." Standridge Dep. 62:23-25, ECF No. 37-3. Dr. Hamrick examined Standridge under anesthesia on October 13, 2006. He found that a portion of Standridge's ObTape was exposed, and he removed the exposed portion. *See id.* at 69:20-23 (acknowledging that a doctor told her that he had "snipped" her sling).

Standridge continued to experience pain, and she developed infections. In 2007 or 2008, Standridge did some internet research on her symptoms, but she did not find a connection between her symptoms and her sling. In May 2008, Standridge consulted with Dr. William Summers. Summers removed another portion of Standridge's ObTape because he believed that the presence of the foreign body could be worsening her infections.[1] Summers Dep. 247:8-17, ECF No. 37-6; *accord* Standridge Dep. 84:6-85:9, 106:22-107:6 (stating that Dr. Summers talked with her about "foreign objects" and acknowledging that she understood that removing the foreign object may help her body heal). Standridge asserts that she did not suspect that her problems might be related to ObTape until she saw a television commercial regarding mesh implant complications in 2012.

Standridge asserts claims for negligence, strict liability (design defect, manufacturing defect, and failure to warn), breach of express warranty, breach of implied warranty,

---

[1] Standridge notes that Dr. Summers testified that he "never linked any sling with any infection." Summers Dep. 240:18-19. He went on to say that he did not think the ObTape "was the cause of the infection other than the presence of a foreign body." *Id.* at 241:15-17.

3

fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.

DISCUSSION

Standridge filed her action in this Court on July 9, 2013 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Standridge lives in Alabama, and all of Standridge's ObTape-related treatment took place in Alabama. The parties agree that Alabama law applies to Plaintiffs' claims.

Alabama has a two-year statute of limitations for personal injury claims. Ala. Code § 6-2-38(*l*). Standridge does not dispute that this statute of limitations applies to all of her claims except her warranty claims. Alabama has a four-year statute of limitations for warranty claims. Ala. Code § 7-2-725(1)-(2). "A cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon." *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 159 (Ala. 1992). "A party has a cause of action, and the statute of limitations begins to run, on the date the first legal injury occurs, but not necessarily from the date of the act causing the injury." *Id.* Thus, the statute of limitations begins to run

4

when a plaintiff first suffers damages as a result of the act causing the injury.  *Id.*

Alabama does not have a discovery rule in most cases; Alabama's discovery rule only applies in fraud actions and "cases involving the fraudulent concealment of the existence of a cause of action."  *Utilities Bd. of City of Opp v. Shuler Bros.*, 138 So. 3d 287, 293-94 (Ala. 2013).  Under Alabama's discovery rule, a claim does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud."  Ala. Code § 6-2-3.  Under this statute, "the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'"  *Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001) (alteration in original) (quoting *Willcutt v. Union Oil Co.*, 432 So.2d 1217, 1219 (Ala. 1983)).  In other words, "the expiration of a limitation period is tolled only until the plaintiff discovers, or should have discovered through the exercise of due diligence, his cause of action."  *Sellers v. A.H. Robins Co.*, 715 F.2d 1559, 1561 (11th Cir. 1983) (per curiam) (applying Alabama law).  As the Eleventh Circuit explained, "[a] plaintiff using the tolling statute must allege, or on summary judgment establish, prima facie facts which show that the defendant fraudulently prevented discovery of the

5

wrongful act on which the action is based." *Id.; accord Holdbrooks v. Cent. Bank of Ala., N.A.*, 435 So. 2d 1250, 1253 (Ala. 1983) (affirming that summary judgment in favor of a defendant where there was no evidence of "an affirmative inducement to [the plaintiff] to delay bringing action").

In *Sellers*, the plaintiff suffered injuries caused by her intrauterine device. The plaintiff asserted that she did not suspect a causal connection between the device and her injuries until years after she suffered the injuries. The Eleventh Circuit found that the plaintiff had not presented sufficient evidence to show that the manufacturer fraudulently concealed her cause of action. *Sellers*, 715 F.2d at 1561. "Instead, she provided numerous exhibits relevant to whether [the manufacturer] fraudulently induced her to use the [product], an issue not before the court." *Id.* In *Sellers*, the "cause of action was tolled until such time as she discovered, or should have discovered, through the exercise of due diligence, the facts constituting the fraud." *Id.* at 1562. The court reasoned that after the plaintiff, a young woman, began to experience "gross gynecological abnormalities," she had a duty "to inquire about the cause of such grave ailments." *Id.*

Here, as in *Sellers*, Standridge argues that Mentor did not adequately disclose the risks of ObTape prior to Standridge's implant surgery and that Mentor continued to market ObTape

6

without disclosing certain complication rates that Mentor had allegedly discovered. In other words, she contends that Mentor initially provided inadequate warnings regarding ObTape and then did not supplement its warnings. That is not a subsequent affirmative act of concealment that kept Standridge from learning that she had been injured or that her injury was connected to ObTape. By 2008, Standridge had undergone at least two excision procedures, and she had been told that the presence of the sling, a foreign body, could be worsening her infections. At that time, a person of common knowledge and experience in Standridge's position would have been on notice that her injuries may be related to ObTape, and she would have been able to begin an investigation to determine whether those injuries were caused by a problem with ObTape, a problem with the implantation surgery, or another problem. Although Standridge did point to evidence that she researched her symptoms on the internet, she did not point to any evidence that she took any further action to investigate after Dr. Summers performed an excision procedure in May 2008, even though she understood from Dr. Summers that the presence of the foreign body could be making her infections worse. The Court is thus not convinced that Standridge exercised reasonable diligence to investigate her potential claims. And, Standridge did not point to any evidence that Mentor took affirmative acts to prevent her from

7

knowing of a potential connection between ObTape and her injuries, so Ala. Code § 6-2-3 does not apply to toll the statute of limitations.

For the reasons set forth above, Standridge's personal injury claims accrued in May 2008 at the latest. She did not bring this action until more than five years later, so all of her claims are time-barred.

## CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 36 in 4:13-cv-243) is granted.

IT IS SO ORDERED, this 19th day of August, 2016.

s/Clay D. Land<br>
CLAY D. LAND<br>
CHIEF U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA